Gerald C. SOUCH, Petitioner,

v.

Denny HARKINS, Defendant.

No. Civ–97–1663–PHX–ROS.

United States District Court,
D. Arizona.

Sept. 22, 1998.

Gerald Charles Souch, Florence, AZ, pro se.

Diane M. Ramsey, Arizona Attorney General's Office, Criminal Appeals Section, Phoenix, AZ, for Grant Woods and Sciavo, respondents.

## ORDER

SILVER, District Judge.

On July 31, 1997, Gerald C. Souch, who is confined at the Arizona State Prison Complex in Florence, Arizona, executed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The petition was filed on August 4, 1997. On March 16, 1998, a magistrate judge issued a supplemental Report and Recommendation,[1] in which he recommended that the petition be dismissed with prejudice because the one-year limitations period for filing a § 2254 Petition had expired and no grounds for equitable tolling existed. For the reasons set forth below, the Court declines to adopt the magistrate judge's Report and Recommendation.

## DISCUSSION

### I. Motion to Strike Respondent's Answer

■ The Court begins with a preliminary matter: Petitioner's Motion to Strike Respondent's Answer. Petitioner urges the Court to strike the Answer on the ground that Respondent did not provide him with a copy of the accompanying exhibits. The exhibits are copies of all pleadings and court orders in petitioner's state criminal case, including all of the post-conviction petitions and the state court dispositions thereof. Petitioner, or the counsel who represented him at any point in the state proceedings, should have received copies of all of the pleadings and orders when they were filed. Accordingly, Petitioner's Motion to Strike will be denied.

### II. The One–Year Limitations Period for Filing a § 2254 Petition

The Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, drastically changed the time limit imposed on state prisoners who file habeas corpus petitions in federal court. Prior to the effective date of the AEDPA, state prisoners faced almost no time limit for filing federal habeas petitions. *Calderon v.*

*United States Dist. Court,* 128 F.3d 1283, 1286 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998). In contrast, the AEDPA limits state prisoners to a one-year period in which to file a petition for a writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1).

### A. Date Upon Which the Limitations Period Begins to Run

■ The one-year limitations period established in the AEDPA runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," or other dates not relevant here. 28 U.S.C. § 2244(d)(1)(A), (D). However, with respect to state inmates whose time for seeking direct review had expired prior to enactment of the AEDPA, the one-year time limit does not begin to run until the date of the statute's enactment, April 24, 1996. *Calderon,* 128 F.3d at 1287. Hence, these prisoners have a one-year grace period extending from April 24, 1996, and ending April 23, 1997. *Id.*

In reaching this conclusion, the Ninth Circuit relied on retroactivity principles. Were courts to apply the one-year limitations period to cases in which the opportunity for direct review had expired prior to the AEDPA's passage, the courts would "impermissibly 'attach[ ] new legal consequences to events completed before [the statute's] enactment.'" *Id.* at 1286–87 (quoting *Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994)). Prisoners whose one-year limitations period had passed would be prohibited from filing petitions that would have been timely before the AEDPA, while other prisoners would have only a few days to prepare a petition before their one-year deadline expired. *Id.*

■ In the present case, the Arizona Supreme Court denied review of Petitioner's direct appeal on March 23, 1988. Petition-

---

1. On November 4, 1997, Magistrate Judge Barry G. Silverman issued the initial Report and Recommendation recommending that the petition be dismissed without prejudice for failure to exhaust state court remedies. On January 21, 1998, this Court referred the case back to Magistrate Silver-

man for further proceedings, upon receiving notice from Petitioner that the Arizona Court of Appeals had denied review of his seventh petition for post-conviction relief on October 17, 1997. The case was subsequently reassigned to Magistrate Judge Morton Sitver.

er's judgment became final ninety days later, upon expiration of the time for filing a petition for writ of certiorari with the United States Supreme Court. *Moore v. Hawley,* 7 F.Supp.2d 901, 903 (E.D.Mich.1998); *United States ex rel. Gonzalez v. DeTella,* 6 F.Supp.2d 780, 781 (N.D.Ill.1998). Because Petitioner's final opportunity for direct review expired long ago, Petitioner falls within the group of prisoners whose one-year limitations period began to run on the date of the AEDPA's enactment. *Calderon,* 128 F.3d at 1287. The magistrate erred in calculating the one-year limitations period by beginning on the date the Arizona Supreme Court denied review of Petitioner's direct appeal.

### B. Tolling the Limitations Period

■ On April 24, 1996, when the one–year limitations period otherwise would have begun to run, Petitioner's amended seventh petition for post–conviction relief, filed on February 6, 1998, was pending before the Arizona courts. The AEDPA tolls the limitations period during the time in which "a properly filed application for States post–conviction or other collateral review with respect to the pertinent judgement or claim is pending." 28 U.S.C. § 2244(d)(2). The tolling provision applies to prisoners whose limitations period began running on the date of the AEDPA's enactment. *See Lovasz v. Vaughn,* 134 F.3d 146, 149 (3rd Cir.1998); *Davis v. Keane,* 9 F.Supp.2d 391, 392 (S.D.N.Y. 1998); *United States ex rel. Garza v. Ahitow,* 8 F.Supp.2d 1069, 1071 (N.D.Ill. 1998).

If Petitioner's seventh state petition was a "properly filed application," then pendency of that petition tolled the federal limitations period until October 28, 1997, the date on which the Arizona Court of Appeals denied the Petitioner's Motion for Reconsideration of its order denying review of the seventh petition. (Doc. # 21). Accordingly, if the predicate of a "properly filed application" is satisfied, then the present federal petition

was timely filed within one year because it was filed even before October 28.[2]

In contrast, if the seventh state petition was not a "properly filed application," pendency of the petition did not toll the federal limitations period. Under these circumstances, the one-year limitations period would have expired on April 23, 1997, several months before Petitioner filed the present federal petition.

### 1. Contents of the Seventh State Petition

To determine whether the seventh state petition for post-conviction relief was a "properly filed application," the Court begins by examining the petition and the amendment thereto. In these documents, Petitioner claimed that he had obtained newly-discovered evidence. Specifically, Petitioner, who was convicted of several counts of sexual assault, claimed that he had learned for the first time on January 4, 1996, when he obtained the victim's medical records pursuant to superior court subpoena, that the victim's medical test results were "negative."[3] According to Petitioner, this evidence was newly-discovered because he had been informed by his counsel, prior to pleading guilty, that the test results were "positive."

Petitioner seventh state petition also included an ineffective assistance of counsel claim based upon counsel's alleged lie about the test results. According to Petitioner, counsel not only informed him that the test results were positive, but also advised him to plead guilty in part because the test results would be a sufficient basis for a conviction if his case went to trial.

The Maricopa County Superior Court dismissed the seventh petition on August 8, 1996, relying upon the following portion of Arizona Rule of Criminal Procedure 32.1:

> Subject to the limitations of Rule 32.2, any person who has been convicted of, or sentenced for, a criminal offense may ...

---

**2.** Petitioner executed his federal petition on July 31, 1997, and filed it on August 4, 1997, prior to exhaustion of his seventh state petition. Upon receiving notice of exhaustion on November 5, 1997, after the Arizona Court of Appeal's October 28, 1997, decision (doc. # 21), this Court re-

ferred the federal petition to a magistrate judge for further proceedings. (doc. 30).

**3.** To what the term "negative" refers is unclear from the report.

institute a proceeding to secure appropriate relief on any of the following grounds:

...

e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:

(1) The newly discovered material facts were discovered after the trial.

(2) The defendant exercised due diligence in securing the newly discovered facts.

(3) The newly discovered material facts are not merely cumulative or used solely for impeachment. . . .

The superior court explained that, almost nine years earlier, on April 21, 1987, petitioner had filed a *pro se* motion to withdraw his guilty plea. In this handwritten, unsigned motion, Petitioner had accused a police detective of lying to the grand jury that indicted Petitioner. According to Petitioner, the detective testified that he was having a sexual assault report analyzed, when, in fact, the detective already had obtained the report. For support, Petitioner quoted the following from a police report, dated June 11, 1986: "the sexual report states 'negitive' " [sic].

Relying upon this quoted portion of Petitioner's 1987 motion, the superior court dismissed Petitioner's seventh petition for state post-conviction relief. The superior court reasoned that Petitioner failed to exercise due diligence with respect to his newly-discovered evidence claim because he had already known about the negative test results almost nine years earlier.

After arriving at this conclusion about Petitioner's newly-discovered evidence claim, the superior court added a waiver argument. The court cited Arizona Rule of Criminal Procedure 32.2, which provides:

a. **Preclusion.** A defendant shall be precluded from relief under this rule based upon any ground:

...

(3) That has been waived at trial, on appeal, or in any previous collateral proceeding."

b. **Exceptions** Rule 32.2(a) shall not apply to claims for relief based on Rule[ ] 32.1 . . (e) [the rule allowing presentation of claims alleging newly discovered evidence].

Because Petitioner's seventh petition did not satisfy the standards governing claims for newly discovered evidence, the superior court reasoned that the claim did not fall within the exceptions to waiver set forth in Rule 32.2(b). As a result, Petitioner had waived the claim and Rule 32.2 precluded raising the claim in a post-conviction motion.[4]

### 2. Was the Seventh State Petition a "Properly Filed Application?"

Neither the AEDPA nor its legislative history define the phrase "properly filed application." *See* S.Rep. No. 104–179 (1995), reprinted in 1996 U.S.C.C.A.N 924; H.R.Conf. Rep. No. 104–518, reprinted in 1996 U.S.C.C.A.N 944. Respondent argues that Petitioner's seventh state petition was not a "properly filed application" because the state court rejected it on procedural grounds. The magistrate agreed, apparently basing its decision on the state court's conclusion that Petitioner waived the argument in the seventh petition.

■ Respondent's argument notwithstanding, the superior court did not rely solely or primarily upon procedural grounds to dismiss petitioner's seventh petition. The superior court's procedural basis for rejecting the claim followed and depended upon the court's initial determination, on the merits, that petitioner had not offered newly-discovered evidence. Because the superior court did not base its decision solely upon procedural grounds, respondent's basis for arguing that the state petition was not a "properly filed application" lacks merit. The seventh petition, addressed by the superior court on the merits, tolled the one-year limitations period; thus, petitioner's federal petition was timely filed.

Moreover, the state petition may have constituted a "properly filed application" for

---

4. The court did not separately address Petitioner's ineffective assistance of counsel claim, which was based, in part, upon the information set forth in Petitioner's newly-discovered evidence claim.

tolling purposes even if the superior court had dismissed it solely on the ground of procedural default. The majority of courts analyzing the meaning of "properly filed application" have interpreted the phrase to encompass all applications submitted in compliance with basic state filing requirements, such as the rules governing the time and place of filing. *See, e.g., Lovasz,* 134 F.3d at 148; *Hughes v. Irvin,* 967 F.Supp. 775 (E.D.N.Y.1997).

For example, the Third Circuit concluded that a Pennsylvania prisoner's state application for post-conviction relief had been "properly filed" because the petitioner complied with the Pennsylvania rule requiring applications to be filed with the clerk of the court in which the petitioner was convicted and sentenced. *Lovasz,* 134 F.3d at 146 (citing Pa. R.Crim.P. 1501). Any state petition satisfying these limited filing requirements was sufficient to toll the one-year limitations period for filing federal petitions. *Id.*

Consistent with those courts looking solely to filing requirements to determine whether a petition is "properly filed," a district court in Texas concluded that a petitioner's second state application was "properly filed." *See Ellis v. Johnson,* 11 F.Supp.2d 695, 697, 1998 WL 384851 *2 (N.D.Tex.1998). In *Ellis,* the state court dismissed a petitioner's second state petition on grounds of procedural default because the petitioner had failed to include all of his claims in his first petition. *Id.* at 697, 1998 WL 384851 *2. Nonetheless, the state petition was "properly filed" pursuant to rules governing time and place of filing. *Id.* Accordingly, the state petition tolled the running of the one-year federal limitations period, resulting in a timely-filed federal petition. *Id.*

Only after addressing the limitations period did the *Ellis* court, adopting the findings and conclusions of a magistrate judge, address the impact of petitioner's state procedural default. The court applied well-developed legal standards governing the impact of a petitioner's state procedural default on his federal habeas petition. The court began with the general rule that federal habeas review is procedurally barred if the state court expressly and unambiguously based its denial of relief on a state procedural default. *Id.* at 698–99, 1998 WL 384851 *3 (citing

*Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The court proceeded to consider whether the petitioner had shown cause for the default plus actual prejudice, and whether imposition of the procedural bar would constitute a miscarriage of justice. *Id.* (citing *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992)).

A district court in Virginia took the same approach taken by the *Ellis* court, addressing the impact of a petitioner's state procedural default only after concluding that the state petition tolled the running of the one-year limitations period. *See Cox v. Angelone,* 997 F.Supp. 740 (E.D.Va.1998). In *Cox,* the state court had found some of the petitioner's claims procedurally barred because petitioner had not raised them at trial or on direct appeal. To these claims, the federal court applied the cause and prejudice and miscarriage of justice standards set forth above. *Id.* at 744–745. The state court also had found the claims addressed on direct appeal to be procedurally barred. The federal court concluded that those claims were collaterally estopped rather than procedurally barred, and proceeded to consider those claims on their merits. *Id.* at 745–46.

Unlike the courts that decided *Ellis* and *Cox,* a district court in New York concluded that a procedurally-barred state petition did not toll the running of the one-year limitations period for filing a federal petition. *Hill v. Keane,* 984 F.Supp. 157, 159 (E.D.N.Y. 1997). The *Hill* court concluded that a petitioner cannot evade the AEDPA's limitations period by filing procedurally-barred motions. *Id.*

As the district court decisions in *Ellis* and *Cox* illustrate, a well-established and extensive body of law governs federal habeas petitions raising issues procedurally barred in state court. To conclude that procedurally-barred state claims do not toll the one-year federal limitations period would effectively abrogate this entire body of law. The one-year period usually would run while the procedurally-barred state petition was pending, thereby entirely precluding a federal

court review of the federal petition. Had Congress intended the one-year limitations period to effectively abolish the law governing federal habeas petitions raising procedurally-barred state claims, a clear indication of that intent would have been apparent in the legislative history. The legislative history is void of any such indication.

 As stated above, the Court has concluded that the Maricopa County Superior Court did not deny Petitioner's seventh petition solely because of procedural default. However, even if procedural default was the sole basis for the superior court's decision, the procedural default does not govern the issue of whether the petition was "properly filed." Petitioner's seventh state petition consists of the required form petition plus an additional memorandum of points and authorities. Petitioner filed both the seventh petition and the amendment with the clerk of the Maricopa County Superior Court, as required. He has in this record complied with all filing requirements, and Respondents offer no argument to the contrary. Accordingly, his seventh state petition was "properly filed." The federal limitations period was tolled while this properly filed state petition was pending; thus, Petitioner timely filed his federal petition.

### III. Motion for Leave to File Supplemental Reply to March 18, 1998, Report and Recommendation

On April 3, 1998, Petitioner filed a Motion for Leave to File a Supplemental Reply to the March 18, 1998, Report and Recommendation. In the Motion, Petitioner actually requests leave to file supplemental objections to the magistrate's report and recommendation. Prior to obtaining a decision on the Motion, Petitioner filed Supplemental Objections on April 23, 1998. By filing the Supplemental Objections, Petitioner rendered the April 3rd Motion moot.

Accordingly,

**IT IS ORDERED** that the case is referred to Magistrate Judge Sitver for further proceedings.

**IT IS FURTHER ORDERED** denying Petitioner's Motion to Strike Respondent's Answer. (Doc. # 38).

**IT IS FURTHER ORDERED** denying Petitioner's Motion for Leave to File a Supplemental Reply to the March 18, 1998, Report and Recommendation as moot. (Doc. # 41).